Bertrand vs. Taylor.

## BERTRAND VS. TAYLOR.

1. EVIDENCE: *Admission.*
   Evidence that the account sued on was shown to and examined by the defendant, and he acknowledged its correctness, or made no objection to it, and that the joint cotton of himself and the plaintiff was shipped with the understanding that the account should be paid out of his part of the proceeds, is not conclusive against him, of the correctness of the whole account. It was a circumstance to be considered with other evidence by the jury.

2. SAME:
   Evidence is not admissible in behalf of a party that disproves admission in his pleadings.

3. TENANTS IN COMMON: *Right to sue co-tenant.*
   One tenant in common cannot sue his co-tenant for his part of the joint property or its proceeds until it is divided, or the co-tenant has done some act inconsistent with the ownership in common, or amounting to a denial of his right.

Bertrand vs. Taylor.

4. ARGUMENT: *Right to begin.*
    The plaintiff has the right to open and conclude the argument whenever it devolves upon him to prove any issue in the case to maintain his action.

APPEAL from *Jefferson* Circuit Court.

Hon. J. A. WILLIAMS, Circuit Judge.

*Dodge & Johnson,* for appellant.

*Carlton, contra.*

HARRISON, J.:

The appellee sued the appellant before a justice of the peace on the following account:

R. C. Bertrand to Cæsar Taylor,                                    DR.
December 1st, 1874.
To ½ proceeds of 27 bales of cotton as per
    contract of labor, say...........  ...........      $700 00

        CR.
By cash paid Cæsar...............................  $175 00
By cash paid Henry................................   40 00
By order for goods to Henry...................   10 00
By ½ cost of bagging and ties..................   81 00
By amount paid for picking.....................  100 00
                                         406 00

                                         $294 00

The complaint alleged that the twenty-seven bales of cotton mentioned in the account were the common property of the plaintiff and the defendant, and that the same had been shipped and sold by the defendant, and the proceeds received by him. No demand upon the defendant for the balance alleged to have been due the plaintiff was averred.

The defendant's answer admitted that the cotton was the common property of the plaintiff and the defendant, and that it had been shipped by himself, and twenty-six bales had been sold, one-half, or the plaintiff's share of the proceeds of which was $759.33; and denied that the other bale had been sold; and he

claimed and filed a set-off of $732.60 for supplies and advances to the plaintiff and Henry Taylor.

The charges for supplies furnished Henry Taylor amounted to $91.83, one item of which was cash $40, November 9, 1874; another, order to Cleveland $10, November 11, 1874, and another, cash to Jack Taylor on note $25, November 27, 1874, and his account contained charges for money paid for cotton picking amounting to $233.47.

The suit was commenced on the 27th of March, 1875.

The plaintiff recovered before the justice of the peace, judgment for $231.59, and the defendant appealed to the Circuit Court when the plaintiff obtained a verdict and judgment for $99.18.

The plaintiff read to the jury a contract in writing executed on the 2d of March, 1874, by the defendant, and the plaintiff and Henry Taylor, by which they agreed to cultivate together that year, 100 acres of the defendant's plantation in cotton and corn, the defendant, besides the land, to furnish the necessary teams, feed for the teams, and farming implements, and the plaintiff and said Henry Taylor to do the work and labor in making and gathering the crop and ginning and baling the cotton, and to furnish one-half the bagging and ties; and the defendant to have one-half the crop and they the other. It was further agreed that if, at any time it became necessary, the defendant might employ other hands, and should be reimbursed what he paid on that account out of their part of the crop, and their part of the crop was not to be mortgaged, sold or removed from the place until the defendant was paid for all supplies and advances which he should make or furnish them.

He then introduced Henry Taylor, who testified that he was one of the parties to the contract, and a son of the plaintiff, and worked as one of the hands in the crop. That there were

besides the plaintiff employed in making the crop seven hands, who, after it was made, assisted in picking the cotton, except the witness' brothers Dick and Jack Taylor, who, after nineteen of the twenty-seven bales had been picked, quit and left the place, but, in about two weeks, returned and continued at work through the season, and the plaintiff was absent from the place three or four days. That only about one-third of the twenty-seven bales was picked by hired hands. And he said the charges in the set-off for advances and supplies to him, had been paid out of six bales of cotton, picked after the twenty-seven bales were shipped.

Jack Taylor testified for the plaintiff that he was a son of the plaintiff, and worked with him in making the crop and also assisted in picking part of the cotton. After about nineteen of the twenty-seven were picked, he left the place and remained away about two weeks. After his return he assisted in gathering the remainder of the crop, and worked for wages, which was to be paid, when the plaintiff should sell his part of it. That the defendant never paid him anything for his labor, but he paid him $25 for Henry Taylor.

Frank Taylor also testified for the plaintiff that only about one-third of the twenty-seven bales was picked by hands hired by the defendant.

The defendant testified in his own behalf that twenty-seven bales of cotton were ready for shipment on the 23d day of November, 1874, and the plaintiff wished to ship them to New Orleans, through Cleveland, Boyd & Co., of Pine Bluff, and to have them held for some time for an advance in price. The defendant would not consent to the removal of the cotton unless account for supplies and advances were paid, whereupon it was agreed and arranged between the plaintiff and him, that the defendant, who was then shipping to New Orleans seventy-four bales of his own cotton through the house of Cleveland, Boyd &

Co., should also ship the twenty-seven bales along with it, and that when the same were sold, the account should be paid out of the proceeds by Cleveland, Boyd & Co. The defendant's account, which is filed as his set-off, was at the time examined by the plaintiff, and he made no objection to it, and it was with his consent and concurrence, handed to J. T. Cleveland, of Cleveland, Boyd & Co., to be paid according to the agreement, and the cotton was accordingly shipped. The cotton, the 101 bales, except one bale which was rejected, was sold on the 4th day of March, 1875, but he did not receive the account of sales, or know what it brought, until after the commencement of the suit, and the last bale or that which was rejected, was not sold until after the trial in the Justice's Court. The cotton was sold together and the twenty-seven bales were included in the account of sales with the defendant's own cotton, and he would not identify any part of it. The bales were of average weight with the others, but the quality was not as good. That his account, filed as a set-off, was correct and just and that the plaintiff had never, that he knew, denied or disputed its correctness until after the suit was brought. The payments charged therein for picking cotton were made by the direct instructions of the plaintiff, and in his presence or upon his order. That after the witnesses, Dick and Jack Taylor, returned, he paid them every Saturday morning for the cotton they picked for the plaintiff during the week, and that during the picking of the twenty-seven bales was absent about two weeks. The wages he paid for picking was seventy-five cents per 100.

J. T. Cleveland testified for the defendant, in substance, the same as he did in regard to the shipment and sale of the cotton, and he further testified that it was agreed between the plaintiff and the defendant, that the latter's account should be paid by witness out of the defendant's part of the proceeds, and the

account or a statement of its amount was handed to him for that purpose. The defendant, after the suit was brought, called upon him for the account of sales of the cotton. He had before been informed that the cotton was sold, but had not received the account of sales. He wrote at once to the commission merchants for it, and, when he received it, he found that the twenty-seven bales were not distinguished from the other cotton and they wrote that they had no means of doing it. One of the 101 bales was rejected, though it appeared from the account of sales that all were sold, and he settled with the defendant for that after the the trial in the Justice's Court. The sample of the twenty-seven bales was not equal to that of the defendant's cotton.

J. R. Harrison also testified for the defendant that he was the manager on the defendant's plantation in 1874, and weighed all the cotton raised on the place, that the twenty-seven bales, owned in common by the plaintiff and defendant, were of average weight with the others shipped at the same time, but the quality was not as good. He was present when the account filed as a set-off was shown to the plaintiff, and was examined by him, and heard him consent to its payment out of his part of the proceeds of the cotton. The defendant paid Jack and Dick Taylor for the cotton they picked after their return to the place, as other hands hired by him. It took, he said, 1300 or 1400 pounds of seed cotton to make a bale. The account of sales was then read. It showed the sales of 101 bales, for the net sum of $5898.56.

The defendant excepted to the refusal of the court to instruct the jury, that if they believed from the evidence the defendant's account was shown to and examined by the plaintiff, and he acknowledged its correctness or made no objection to it, and the cotton was shipped with the understanding that it should be paid out of his part of the proceeds, they should allow the whole of the account against the plaintiff's demands.

There was clearly no error in the refusal to give this instruction, for though he may have admitted its correctness, when shown to him, he was not precluded from proving at the trial that it was not true or contained charges that were not correct, and there was evidence which controverted some of the charges. Another instruction, which was given for the defendant to the effect that if the plaintiff, when the account was shown him, either admitted its correctness, or made no objection to it, that was a circumstance to be weighed with the other evidence when considering the set-off, stated the law upon that point correctly.

He also excepted to its refusal to allow his counsel to open and conclude the argument to the jury, and in this also we think there was no error. It is insisted that, as the defendant admitted that he had received the plaintiff's part of the proceeds of the cotton and that it was as much and even more than he claimed in the suit, and that he was entitled to a judgment for a balance, the controversy related only to the set-off, and the burden of proof was on the defendant. But the defendant did not admit that all the cotton, but only twenty-six bales had been sold; and the plaintiff was entitled, if the evidence showed a sale of the whole, and it so appeared by the account of sales, and that a larger sum had been received than was admitted, to amend his complaint. There was no evidence, however, that a larger sum was received. That admitted, the account of sales showed to be the proceeds of the twenty-seven bales. However, it devolved upon the plaintiff to prove a conversion by the defendant, for the plaintiff's part of the proceeds of the cotton came lawfully into his hands, and that entitled him to open and conclude his argument. Gantt's Dig., sec. 4668.

In respect to some of the charges in the set-off the evidence was conflicting, but it was the province of the jury to weigh the opposing statements of the witnesses and determine the disputed

facts. We may, however, remark that some of the items in the set-off, we have particularly mentioned, are credited in the plaintiff's account, and the testimony of the witness Henry Taylor, that these had been paid out of the proceeds of other cotton, ought not to have been received, and no doubt would have been excluded, if objected to.

The cotton being their joint property, the money for which it sold also belonged to them in common. Therefore, until it was divided, or the defendant had done some act inconsistent with such ownership in common, or which amounted to a denial of the plaintiff's right, the latter could not maintain an action against him for his part. In the case of *Southwork* v. *Smith*, the Supreme Court of Connecticut say : "It is a general principle of the common law, that when personal property is owned by several persons, all of them are equally entitled to the possession of it. It results from this principle that when one of them is in the actual possession of it, he has a right to maintain it against the others. His possession is deemed in law to be the possession of all the owners, and there is no specific remedy by which he can be compelled to deliver the possession of it to the others. Nor does the mere possession of it render him liable to them, or any of them, for any injury done to it by him, short of a destruction of it, or a conversion of the whole of it to his own use, or that which is equivalent." 27 Conn., 355.

The plaintiff made no demand upon the defendant before his suit was brought, and there was no evidence of anything like a conversion by him of the plaintiff's part of the money ; on the contrary, it was proven that he had not, when the suit was commenced, received the account of sales, and did not know for how much the cotton sold, and was in fact unable to settle with the plaintiff concerning the cotton.

The judgment of the court below is reversed, and the cause remanded, with instructions to grant the appellant a new trial.